UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVON BELL,

    Petitioner,

v.

CATHLEEN STODDARD,

    Respondent.

_____/

Case No. 14-12182

HON. AVERN COHN

# MEMORANDUM AND ORDER
# DENYING PETITION FOR WRIT OF HABEAS CORPUS
# AND DENYING A CERTIFICATE OF APPEALABILITY

## I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Devon Bell, (Petitioner), a state inmate, has filed a pro se petition for a writ of habeas corpus challenging his convictions for second-degree murder and felony-firearm. Respondent, through the Michigan Attorney General's Office, filed a response, arguing that Petitioner's claims are procedurally defaulted and/or without merit. For the reasons which follow, the petition will be denied.

## II. Procedural History

Petitioner was originally charged with first-degree murder, several counts of assault with intent to commit murder, and felony-firearm. Following a jury trial, in which Petitioner was tried jointly with co-defendants William Morton and Derryck Brantley, he was convicted of the lesser included offense of second-degree murder and guilty as

charged of felony-firearm. Petitioner was acquitted of assault with intent to murder.[1]

The state court's affirmed Petitioner's conviction on. People v. Bell, No. 295573 (Mich.Ct.App. May 24, 2012); lv. den. 493 Mich.870 (2012); reconsideration den. 493 Mich. 943 (2013).

Following direct review, Petitioner returned to the trial court and filed a filed a motion to compel firearms testing with the state court on the basis of newly-discovered evidence that Eric Lomax, who had been identified as a potential suspect in the murder case, had recently been arrested for carrying a concealed weapon that petitioner speculated may have been the actual murder weapon. Petitioner asked the trial court to preserve the firearm and have it tested to determine if it was, in fact, the actual murder weapon used in the case. Petitioner also filed a motion to compel the production of fingerprint evidence retrieved from the getaway vehicle.

While the above motions were pending in state court, Petitioner filed the instant petition in which he asked that the case be stayed pending the outcome of the motions. (Doc. 1). The Court granted the request and stayed the case. (Doc. 5).

The trial court later denied Petitioner's motion to preserve and test the firearm. People v. Bell, No. 08-18563-FC (Third Cir. Ct. Feb. 5, 2015). A different trial court judge subsequently denied the motion to test the fingerprint evidence. People v. Bell, No. 08-18563-FC (Third Cir. Ct. May 13, 2016). Petitioner appealed. The Michigan Court of Appeals dismissed the appeal from the motion to preserve and test the firearm

---

[1]Morton was found guilty as charged of all the crimes. Brantley was acquitted of all of the charges. Petitioner and Brantley were tried by the same jury. Morton was tried jointly with petitioner and Brantley but by a separate jury.

as untimely. People v. Bell, No. 335397 (Mich.Ct.App. Feb. 8, 2017). The Michigan Court of Appeals rejected the appeal from the denial of the motion to test the fingerprint evidence "for lack of merit in the grounds presented." Id. The Michigan Supreme Court denied leave to appeal. People v. Bell, 501 Mich. 946 (2017).

Petitioner then returned to federal court and requested that the stay be lifted. The Court lifted the stay (Doc. 18) and accepted Petitioner's amended petition. (Doc. 18).

Combining the original and amended petitions, Petitioner seeks relief on the following grounds:[2]

> I. Petitioner's federal constitutional right to a fair trial, a properly-instructed jury, and a right to present a defense was violated where the trial court refused to give a defense requested manslaughter instruction. [Original Petition Claim I].
>
> II. Petitioner was denied the right to confrontation when statements of a non-testifying codefendant and a non-testifying third party were admitted in evidence against him [Original Petition Claim II].
>
> III. The state courts' decision denying Petitioner's request to firearms testing were an unreasonable application of his Brady and Youngblood claims to discovery of potentially exculpatory evidence [Amended Petition Claim I].
>
> IV. The state courts' decision denying Petitioner's request for fingerprint examination evidence were an unreasonable application of his Brady and Youngblood claims to discovery of potentially exculpatory evidence [Amended Petition Claim II].

III. Facts

The Michigan Court of Appeals summarized the material facts, which are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1).

---

[2] The Court numbers the claims from the original and amended petitions in chronological order for judicial clarity.

3

> This case arises from gang-related shootings [3] that occurred on October 16, 2008, outside of Henry Ford High School ("HFHS") in Detroit, which resulted in the death of Christopher Walker and injuries to Kejuana McCants, Maleek Slater, and Leon Merriweather.

People v. Morton, No. 294823, 2012 WL 1890041, at *1 (Mich. Ct. App. May 24, 2012).

The Court supplements the Michigan Court of Appeals' factual summary with additional relevant evidence gleaned from the record as follows:

At trial, Janay Greer, Prezelle Cunningham, and Brandy Patterson all testified that Petitioner was present with Morton and armed with a weapon at the time of the shooting. Greer testified that Petitioner had a gun, but she did not see him actually shoot it. (Tr. 9/11/09, pp. 114-115, 159-162). Greer heard five or six shots from two guns. Greer also testified that Morton had a handgun and Petitioner had a big gun. (Id., pp. 106-108, 115, 126, 157-58).

Cunningham testified that the BCB members, including Morton and Petitioner, were standing on Pembroke by a black car. (Tr. 9/14/09, pp. 83, 86-88, 123-127). Someone closed the trunk. (Id., pp. 88, 90, 92). Cunningham further testified that Petitioner had a handgun and turned toward their group and began shooting. (Id., pp. 89-90, 135, 139, 144-145). She also testified that Morton was behind Petitioner. (Id., p. 101). Cunningham testified the she ran and Christopher Walker was behind her when he fell. She further stated that she heard fifteen shots from more than one gun. Cunningham turned Walker over, putting his jacket on him to stop the bleeding. (Id., pp. 90-93, 136-139). Cunningham later positively identified Petitioner and Morton at a

---

[3] Evidence indicated that Morton was a member of BCB–AL (Burgess, Chapel, Blackstone Across Lahser). The murder victim, Christopher Walker, was acknowledged to be a member of the FOE–Life gang (Family Over Everything). (Footnote original).

4

photographic lineup. (Id., pp. 94-96).

Patterson was co-defendant Brantley's girlfriend and they had a child together. (Tr. 9/3/09, pp. 68-69, 145-146; Tr. 9/8/09, p. 81). Patterson testified that she got out of school at 2:20 p.m. and was waiting for Brantley with her friend Angie Samuels and that Brantley was supposed to give her a ride. (Tr. 9/3/09, pp. 73, 157, 164; Tr. 9/8/09, pp. 82, 84-85). About five to seven minutes after she was outside, Patterson noticed Morton and Petitioner, whose name she did not know, carrying firearms. (Tr. 9/3/09, pp. 75; Tr. 9/8/09, pp. 33, 87-88). Patterson testified that Petitioner and Morton were at the corner of Trojan and Evergreen with a group from BCB. (Tr. 9/3/09, pp. 77, 120; Tr. 9/8/09, pp. 46, 86). Morton had a handgun on his hip. (Tr. 9/3/09, pp. 76-77, 157, 161; Tr. 9/8/09, pp. 45, 47, 50, 112-113, 121). Patterson testified that Petitioner had a long gun in his hand. (Tr. 9/3/09, pp. 76-77, 157). She then testified that Morton grabbed the long gun. (Tr. 9/3/09, pp. 76-77, 105, 161; Tr. 9/8/09, pp. 47-49, 51, 53, 114-115, 132).

Patterson further testified that she saw Christopher Walker with a group of people. According to Patterson, there was only going to be a fist fight and Walker had been in those before. Patterson knew that Walker was a member of another gange, FOE, and had been in many fights. (Tr. 9/3/09, pp. 82, 99-100, 106, 154-155; Tr. 9/8/09, pp. 25-26). Patterson warned Walker that BCB members were waiting for him with guns on Pembroke and Evergreen. (Tr. 9/3/09, pp. 102, 104, 153; Tr. 9/8/09, pp. 26-28, 94, 126). Walker responded: "I don't care. My people got guns too." (Tr. 9/3/09, pp. 104-106; Tr. 9/8/09, pp. 28, 32, 97). Patterson saw some BCB people at Pembroke and Evergreen but she did not see any guns. (Tr. 9/3/09, pp. 101-02). As Walker and his group approached the other group, Patterson heard gunshots from three different

5

weapons and people began running. (Id., pp. 106-07). Patterson could not identify the shooters at trial.[4]

Five days after the shooting, 17-year-old Betty Bridges informed Michigan State Police Detective Sergeant Faith Larkins that Petitioner had told her Bridges that he shot Walker in the head. (Tr. 9/14/09, pp. 183-184; Tr. 9/15/09, pp. 23-26). Bridges' statement was played for the jury at trial. (Tr. 9/14/09, pp. 186, 195; Tr. 9/15/09, pp. 24-26). At trial, it was revealed that after receiving a subpoena for the preliminary examination, Bridges went back to the police station and attempted to retract her earlier statement incriminating Petitioner, claiming it was false. (Tr. 9/14/09, pp. 186-187, 193, 198-201, 207-212; Tr. 9/15/09, pp. 26, 30-31).

Detroit Police Department Crime Scene Services Sergeant David Babcock collected samples from Petitioner to test for gunshot powder residue on October 16, 2008 at 10:10 p.m. As Babcock was collecting samples from Petitioner's left hand, Petitioner wiped his right hand on his pants. (Tr. 9/9/09, pp. 113-118, 125). Subsequent testing of the sample revealed that Petitioner had gunshot residue on his hand. (Tr. 9/10/09, pp. 54, 63).

Andrew Paige was a good friend of Petitioner's who was with him when he was arrested at home. (Tr. 9/15/09, p. 108). Paige told Sergeant Matthew Gnatek that

---

[4]At a prior investigative subpoena proceeding held on October 19, 2008, Patterson testified that Morton had a long gun, handed it to an unknown individual and took it back. At the preliminary examination, Patterson identified Petitioner as this unknown man after seeing him on the news. (Tr. 9/8/09, pp. 48, 57, 69-77, 128-131). Patterson testified that she did not personally know Petitioner but she had earlier mistakenly testified that she had seen him around school. (Id., pp. 51-52, 113-114, 127-131).

6

Petitioner said that FOE-Life members were walking toward him, but stopped when he pulled out a gun. Petitioner told Paige that when the men began walking towards him again, he shot a guy and took off running. (Tr. 9/16/09, pp. 15-16). A trial, Paige denied making these statements to Sergeant Gnatek. (Tr. 9/15/09, pp. 119-121, 125-29).

IV. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

7

clearly established federal law erroneously or incorrectly." Id. at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102(citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

The Court notes that the Michigan Court of Appeals reviewed and rejected the petitioner's first and second claims under a plain error standard because he failed to preserve the issues as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. See Stewart v. Trierweiler, 867 F.3d 633, 638 (6th Cir. 2017); cert. den. 138 S. Ct. 1998 (2018).

V. Discussion

A. Procedural Default

Respondent says that Petitioner's first and second claims are procedurally defaulted because he failed to preserve these issues as constitutional claims in state court. Respondent also argues that Petitioner's third claim is defaulted because he did not exhaust the claim at the appellate court level, the appeal was rejected as untimely and he no longer has an available state court remedy to exhaust this claim.

The Court declines to find that Petitioner's claims are defaulted. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. See <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." <u>Hudson v. Jones</u>, 351 F. 3d 212, 215 (6th Cir.2003)(citing <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997)). Likewise, a habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1987). A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." <u>Friday v. Pitcher,</u> 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002). Because Petitioner's first through third claims are non-cognizable or without merit, it is more efficient to address the claims on the merits.

B. Petitioner's Claims

### 1. Jury Instruction Claim

As part of his first claim, Petitioner argues that he was denied his right to a fair trial and to present a defense when the judge failed to instruct the jurors on the lesser included offense of voluntary manslaughter. This claim lacks merit.

The Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. See Adams v. Smith, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (citing to Beck v. Alabama, 447 U.S. 625, 638, n. 4 (1980)). Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. Id. Beck has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." Campbell v. Coyle, 260 F. 3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. Bagby v. Sowders, 894 F. 2d 792, 797 (6th Cir. 1990); See also Scott v. Elo, 302 F. 3d 598, 606 (6th Cir. 2002). The Michigan Court of Appeals' determination that a lesser included offense instruction was not warranted under state law in petitioner's trial was not contrary to, nor an unreasonable application of, Supreme Court precedent, and thus does not support federal habeas relief. See Worden v. McLemore, 200 F. Supp. 2d 746, 756 (E.D. Mich. 2002); See also Tegeler v. Renico, 253 F. App'x. 521, 524-25 (6th Cir. 2007)(due process did not require jury instruction on the lesser-included offense of voluntary manslaughter in prosecution for first-degree murder).

Moreover, the Michigan Court of Appeals reasonably concluded that there was insufficient evidence to support the giving of an instruction on voluntary manslaughter:

> The evidence presented in this case does not support Bell's request for an instruction on manslaughter. Testimony indicated that Bell and Morton were outside HFHS with weapons before the final dismissal of classes. Bell was not a student at HFHS. Prezelle Cunningham testified that he saw Bell holding a handgun pointed in his direction and shooting. While Morton had been involved in an altercation with Walker earlier in the day, no evidence was adduced to demonstrate Bell's presence or participation in this fight. Testimony confirmed that Walker was in class and did not exit to the area where Bell and Morton were until final dismissal, precluding any immediate precipitating event or interaction. There was no evidence that Walker was armed or had presented any immediate threat to Bell or Morton before the shooting erupted. Based on the lack of evidence to suggest that this shooting occurred in the "heat of passion," there was no rational basis for provision of the requested instruction[,].

People v. Morton, 2012 WL 1890041, at * 13 (internal citations omitted).

Petitioner is not entitled to habeas relief on his jury instruction claim.

## 2. Confrontation Clause Claim

In his second claim, Petitioner argues that his Sixth Amendment right to confrontation was violated by the admission of text messages that were sent between co-defendants Morton, Brantley, and a third person, Ryan Houston. Petitioner says that the admission of Morton's and Brantley's text messages at their joint trial, where neither co-defendant testified, was contrary to the holding in Bruton v. United States, 391 U.S. 123, 127-28 (1968), in which the Supreme Court held that a defendant is denied the constitutional right of confrontation where a non-testifying co-defendant's incriminating confession is admitted at a joint trial.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant

11

has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. See Crawford v. Washington, 541 U.S. 36 (2004). However, the Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. See Davis v. Washington, 547 U. S. 813, 823-26 (2006); Desai v. Booker, 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include comments made to family members, or acquaintances, business records, or statements made in furtherance of a conspiracy. Crawford, 541 U.S. at 51-52, 56. In holding that the Sixth Amendment right to confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' Ibid. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."

Davis, 547 U.S. at 823-24 (quoting Crawford, 541 U.S. at 51).

Moreover, "[B]ecause it is premised on the Confrontation Clause, the Bruton rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." U.S. v. Johnson, 581 F. 3d 320, 326 (6th Cir. 2009).

Here, the text messages between the two co-defendants and a third-party did not qualify as testimonial statements covered by the Confrontation Clause because they were casual remarks made to a friend or acquaintance and not ones made to law enforcement. Morever, because the Confrontation Clause has no applicability to non-

12

testimonial statements, they may be admitted even if they lack indicia of reliability. See Whorton v. Bockting, 549 U.S. 406, 420 (2007).[5] Petitioner is therefore not entitled to relief on his confrontation claim.

### 3. Post-Conviction Discovery and Testing Claims

Petitioner's third and fourth are addressed together because they are interrelated. In his third claim, Petitioner contends that trial court erred in denying his post-conviction request to order testing on a firearm confiscated from Eric Lomax by the police in 2012. Lomax had been identified as a possible shooter by two witnesses to the murder. Petitioner sought to have the firearm seized from Lomax in 2012, four years after the murder, tested to determine if it was the weapon that had been used to murder Walker. As noted above, the trial court denied the request. In his related fourth claim, Petitioner filed a motion to compel the Michigan State Police to turn over any fingerprint evidence taken from the getaway vehicle to determine if any of these fingerprints were Lomax's prints. As also noted above, this request was denied.

A state prisoner does not have a freestanding substantive due process right to forensic testing after he or she has been convicted. See Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 72-74 (2009). The trial court's decision to deny Petitioner's requests to order testing of the firearm confiscated from Lomax in 2012 or to compel the disclosure for possible testing of the fingerprints does not entitle Petitioner to habeas relief.

---

[5]Petitioner cites Ohio v. Roberts, 448 U.S. 56 (1980) in support of his argument that the text messages were inadmissible because they lack indicia of reliability. Petitioner's reliance on Roberts is misplaced because Roberts was overruled in Crawford. See Dorchy v. Jones, 398 F.3d 783, 788 (6th Cir. 2005).

Likewise, a prosecutor in a criminal case "do[es] not have a constitutional duty to perform any particular test." Coy v. Renico, 414 F. Supp. 2d 744, 777 (E.D. Mich. 2006)(quoting Arizona v. Youngblood, 488 U.S. 51, 59 (1988)). Indeed, the Due Process Clause is not violated simply because "the police fail to use a particular investigatory tool." Youngblood, 488 U.S. at 59. Thus, the failure to test the firearm confiscated from Mr. Lomax in 2012 or to determine whether his fingerprints were obtained from the getaway vehicle does not amount to a constitutional violation. Coy v. Renico, 414 F. Supp. 2d at 777.

Finally, Petitioner has failed to show that any testing would exculpate him of the murder. As set form above, the evidence against him was overwhelming. Several witnesses identified Petitioner as either the shooter or aiding and abetting in the shooting. Gunshot residue was found on his hand. Two individuals told the police that Petitioner confessed to shooting Walker, although they recanted their statements at trial. Any of the proposed testing would have at most only established that Lomax was himself involved in the shooting but would not have exonerated Petitioner. Petitioner is not entitled to relief on his third and fourth claims.

## VI. Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of

petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore **DECLINES** to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). [6] See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**SO ORDERED.**

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 11/14/2018
      Detroit, Michigan

---

[6]"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.